UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – NORTHERN DIVISION
_____

EBONY HENDRIX, KELLY SPILLER, and            Case No.: 1:15-cv-12364
FELICIA MCDANIEL,
                                             Hon. Thomas L. Ludington
        Plaintiffs,

vs.

CALVIN AKIN, a resident of Wisconsin, and

PREMIER REAL ESTATE MANAGEMENT, LLC,
a Wisconsin limited liability company, and

PREMIER SAGINAW I, LLC
a Wisconsin limited liability company, and

ORKIN, LLC
a Delaware limited liability company,

        Defendants.
_____/

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

NOW COME Plaintiffs, by and through counsel, and pursuant to LR 7.1(c), (d), and (e)(1) hereby respond to the defendants' (excluding Orkin, LLC) motion to dismiss their complaint pursuant to F.R.Civ.P. 12(b)(6) stating that they rely upon the facts and law as further stated in their Brief in Support attached hereto.

**WHEREFORE** Plaintiffs request that this Honorable Court deny the defendants' motion, award them the costs and fees incurred in this matter, and grant other such relief as the Court deems just and equitable.

 September 21, 2015                    /s/ Todd H. Nye
                                      Todd H. Nye (P59301), Nye & Associates, PLLC
                                      Attorney for  Plaintiffs
                                      3975 W. Federal Hwy., Ste. 1
                                      Roscommon, MI 48653
                                      (989) 821-1225 tx.; (989) 821-1133 fx.
                                      enotice@nyelaw.org

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – NORTHERN DIVISION
_____

EBONY HENDRIX, KELLY SPILLER, and
FELICIA MCDANIEL,

       Plaintiffs,

vs.

CALVIN AKIN, a resident of Wisconsin, and

PREMIER REAL ESTATE MANAGEMENT, LLC,
a Wisconsin limited liability company, and

PREMIER SAGINAW I, LLC
a Wisconsin limited liability company, and

ORKIN, LLC
a Delaware limited liability company,

       Defendants.
_____/

Case No.: 1:15-cv-12364

Hon. Thomas L. Ludington

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR RESPONSE
TO DEFENDANTS' MOTION TO DISMISS**

## Table of Contents

Index of Authorities ............................................................. 3

Index of Exhibits ................................................................ 5

Concise Statement of Issues Presented ............................... 6

Controlling or Most Persuasive Authority .......................... 7

I.   Factual Background. ....................................................... 8

II.  Law and Argument ......................................................... 9

     A.  Standard of Review for motions under F.R.Civ.P. 12(b)(6) .......................... 9

     B.  Defendants' affirmative defense of contract waiver and indemnification fail
         as a matter of law. ................................................................... 9

     1. Landlord Duty Under Michigan Housing Act to Keep Building Free
        From Vermin ....................................................................... 10

        a. The vermin agreements are illegal and void *ab initio* pursuant to
           MCL 125.474 ................................................................... 11

     2. The vermin agreements violate the Michigan Truth in Renting Act ................ 11

        a. No Waiver of Alteration of Remedy under MCL 554.139 ........................ 11

        b. No Exculpation of Landlord liability ........................................ 14

     C.  Plaintiffs do not state  RICO claims under 18 U.S.C.. §1962(a) or (b) ...... 14

     D.  Plaintiffs do state RICO claims under 18 U.S.C §1962(c) and (d) ............... 15

           1.  Plaintiffs sufficiently allege an "enterprise" under *Boyle* .............. 16

           2.  Defendants are sufficiently distinct under *W. Hills Farm LLC*
               and all Defendants meet the "operation or management" test ........ 20

           3.  Plaintiffs allegations satisfy the causation requirements
               under 18 U.S.C. §1962(c) and (d). ....................................... 24

III.   Request for Relief ...................................................... 26

## Index of Authorities

**Federal Cases**                                                                 **Page(s)**

*Begala v PNC Bank, Ohio, Na. Ass'n,* 214 F.3d 776, 781 (6th Cir. 2000),          20

*Boyle v. United States*, 556 U.S. 938, 944-45 (2009)                              16, 17

*Bridge Phoenix Bond & IIndem., Co.* 128 S. Ct. 2131, 2145 (2008)                  15

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)                22

*De Luce v. Fort Wayne Hotel*, 311 F.2d 853 (6th Cir. 1962)                       11

*Grange Mut. Cas. Co. v. Mack*, 290 F. App'x 832, 835 (6th Cir. 2008)              25

*Heinrich v Waiting Angels Adoption Services, Inc.* 668 F.3d 393 (6th Cir. 2012)  16

*Herhold v. Green Tree Servicing, LLC*, 608 F. App'x 328, 331 (6th Cir. 2015)      9

*Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258 (1992)                         25, 26

*Midwest Grinding Co., v Spitz,* 716 F.Supp 1087, 1091 (ND IL, 1989)               15

*Ouwinga v Benistar 419 Plan Servs.*, 694 F.3d 783, 793 (6th. Cir. 2012)         18, 19

*Reves v Ernst & Young,* 507 U.S. 170, 179-183                                     16, 22

*United States v Sinito,* 723 F.2d 1250, 1260 (6th Cir. 1983)                    16

*VanDenBroeck v CommonPoint Mortg. Co.* 553 U.S. 639 (2008)                        16

*West Hills Farms, LLC v. ClassicStar Farms, Inc.*                                 20, 20, 22
*(In re ClassicStar Mare Lease, Litig.),* 727 F.3d 473, 492 (6th Cir. 2013)


**State Cases**

*Calef v W.,* 252 Mich. App. 443 (2002)                                            10, 13

*Connors v Benjamin J. Magid, Inc.,* 353 Mich. 628 (1958)                          11

**Federal Statutes**

18 U.S.C. §1961 et seq.                                                            8

18 U.SC. §1961(4)                                                                  16, 17

§18 U..S.C. §1962(a)                                    14, 15

§18 U.S.C. §1962(b)                                     14, 15

§18 U.S.C. §1962(c)                             14, 15, 23, 24, 26

§18 U.S.C. §1962(d)                             14, 15, 24, 26


**State Statutes**

MCL 125.474                                           10, 11, 14

MCL 554.139                                           11, 12, 13

MCL 554.139(2)                                            13

MCL 554.139(3)                                            11

MCL 554.633                                        11, 12, 13, 14

MCL 554.633(a).                                           13

MCL 554.633(b)                                            14


**Federal Court Rules**

F.R.Civ.P. 12(b)(6)                                    8, 9, 10

F.R.Civ.P. 56                                             10

F.R.Civ.P. 56(a)                                          10

## <u>Index of Exhibits</u>

These exhibits are filed at Doc. 21 under Plaintiffs' Coversheet for Exhibits 1-18

**1.** A page from Premier's web site

**2.** 2/26/2015    Hendrix residential lease

**3.** 5/09/2014    Spiller residential lease

**4.** 12/29/2014    McDaniel residential lease

**5.** 10/10/2008    Certificate of Cancellation for The Crossings

**6.** 05/22/2008    Log, Saginaw County Register of Deeds; deed, Crossings to Premier Saginaw I, LLC

**7.** 02/25/2015    Vermin addendum (Hendrix)

**8.** Orkin Bed Bug Instructions

**9.** 06/08/2015    Demand for Possession (Spiller)

**10.** 02/12/2015    Orkin invoice, landlord demand for payment (Hendrix)

**11.** 01/13/2015    Tenant statement (with Orkin charges) (McDaniel)

**12.** 07/01/2015    Statutory Notice to Defendants Re: Truth In Renting Act Violations

**13.** 08/27/2015    Affidavit of Ebony Hendrix

**14.** 08/27/2015    Affidavit of Kelly Spiller

**15.** 08/27/2015    Affidavit of Felicia McDaniel

**16.** 01/11/2011    Law Review. Note: Don't Let Them Bit: Defining the Responsibilities of Landlords and Tenants in the Event of a Bedbug Infestation.

**17.** Spring 2011    Article, American Entomologist: The History of Bed Bug Management – with Lessons from the Past

**18.** 07/01/2015    Saginaw Housing Commission Five Year Plan

## <u>Concise Statement of Issues Presented</u>

1.     Defendants state that Plaintiffs' claims are barred by the defendants' affirmative defense of contract waiver and indemnification.  Plaintiff responds that the vermin agreements are illegal under Michigan law, and therefore those contractual provisions of waiver and indemnification are void *ab initio* and the defendants' defense fails as a matter of law.

2.     Defendants allege that Plaintiffs fail to state RICO claims under 18 U.S.C.. §1962(a) and (b), and Plaintiffs agree.

3.     Defendants allege that Plaintiffs fail to state RICO claims under 18 U.S.C.. §1962(c) and (d).  Plaintiffs respond that they have plead sufficient allegations for RICO "conduct" and "conspiracy" claims, and further, on the specific legal issues raised by the defendants, there clearly are sufficient allegations for each of the following specific elements under §1962(c) and (d):

       a.     the existence of an "enterprise" under *Boyle, supra,*

       b.     sufficient distinctness and "operation or management" under *West Hills Farm, LLC, supra,*

       c.     "direct-injury" proximate causation under *Reves, supra* and *Ouwinga, supra.*

## <u>Controlling or Most Appropriate Authority</u>

MCL 125.474 (Michigan Housing Law)

MCL 554.139 (Michigan Truth in Renting Act)

*Calef v W.,* 252 Mich. App. 443 (2002)

*Boyle v. United States*, 556 U.S. 938, 944-45 (2009)

*De Luce v. Fort Wayne Hotel,* 311 F.2d 853 (6th Cir. 1962)

*Grange Mut. Cas. Co. v. Mack*, 290 F. App'x 832, 835 (6th Cir. 2008)

*Ouwinga v  Benistar 419 Plan Servs*., 694 F.3d 783, 793  (6th.  Cir. 2012)

*Reves v Ernst & Young,* 507 U.S. 170, 179-183

*West Hills Farms, LLC v. ClassicStar Farms, Inc.*
*(In re ClassicStar Mare Lease, Litig.),* 727 F.3d 473, 492 (6th Cir. 2013)

I.      **Factual Background**

Since the defendants' motion is under F.R.Civ.P. 12(b)(6), the plaintiffs rely upon the facts as alleged in the First Amended Complaint (Doc. 13) and Plaintiff's Exhibits 1-18 (Doc. 21)

Similarly, Defendants should have relied upon the allegations in the plaintiffs' First Amended Complaint for the purposes of their motion to dismiss for the plaintiffs' alleged failure to state a claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO") at 18 U.S.C. §1961 et seq.

However, Defendants actually alleged new facts or otherwise alleged facts contrary to facts as alleged by the plaintiffs.

Hence, Plaintiffs object to the defendants' recitation of facts, to the extent they are inconsistent with or otherwise allege any fact not stated in the First Amended Complaint, including, but not limited to:

     a.    Defendants' allegations about its "reputation" and capital expenditures;

     b.    "Clearly, there was no infestation of bed bugs at the inception of each tenancy."

     c.    "Plaintiff, each and every one of them, permitted bed bugs to infest their demised premises."

     d.    Defendants' implied argument that the plaintiffs' claims are barred by provisions in the residential leases regarding the plaintiffs' assumption of the condition of the premises, waiver, and indemnification.

Additionally, Plaintiffs' First Amended Complaint is neither "boilerplate" nor a routine state-court, landlord/tenant matter.  Plaintiffs are poor people, three single mothers, each with children in their inhabitable homes, receiving housing monies from the United States government, who state a *prima facie* claim for racketeering against the sophisticated and wealthy

defendants as discussed below, who conduct their enterprise in a uniquely cruel and predatory manner.

## II.    <u>Law and Argument</u>

### A.  Standard of Review for motion under F.R.Civ.P. 12(b)(6)

Succinctly stated, the standard for a motion under Rule 12(b)(6) is as follows:

In considering a Rule 12(b)(6) motion, a court "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). A complaint should only be dismissed if it is clear to the court that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). The factual allegations need not be detailed, but must be more than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

*Herhold v. Green Tree Servicing, LLC*, 608 F. App'x 328, 331 (6th Cir. 2015)

### B.  Defendants' affirmative defense of contract waiver and indemnification fail as a matter of law

Oddly, Defendants allege in their factual recitations that "Plaintiffs inspected their apartments and signed a notice of acceptance acknowledging that the demised premises were suitable for habitation" and that "Plaintiffs were under an affirmative duty to maintain the premises in a sanitary manner."  Defendants rely upon the express language of the residential lease agreements, presumably, as an absolute defense to the plaintiffs' claims.

Further, Defendants allege they merely exercised their express "contractual right to impose upon the Plaintiffs reasonable costs for the extermination of the bed bugs pursuant to the contractual language" in the residential lease.

Consequently, because Defendants improperly raised the affirmative defense in a "motion to dismiss" the plaintiffs must now substantively respond.

First, a motion for summary judgment on affirmative defenses is properly brought under F.R.Civ.P. 56(a).   Therefore, to the extent that Defendants seek relief under F.R.Civ.P. 56, Plaintiffs object because the defendants' motion and brief is expressly limited to F.R.Civ.P. 12(b)(6)

Nevertheless, even if the defendants seek dismissal on their affirmative defense of waiver and indemnification, it fails as a matter of Michigan law.

### 1.   Landlord Duty Under Michigan Housing Act to Keep Building Free from Vermin

The Housing Law of Michigan at MCL 125.474 imposes a statutory duty on the landlord to exterminate vermin, to wit:

> Cleanliness of dwellings. Every dwelling and every part thereof shall be kept clean and shall also be kept free from any accumulation of dirt, filth, rubbish, garbage or other matter in or on the same, or in the yards, courts, passages, areas or alleys connected therewith or belonging to the same. The owner of every dwelling shall be responsible for keeping the entire building free from vermin. The owner shall also be responsible for complying with the provisions of this section except that the tenants shall be responsible for the cleanliness of those parts of the premises that they occupy and control.

Any contract term which violates the Housing Act of Michigan, absent express statutory authority, is void *ab initio*, and cannot be waived by agreement or otherwise. *Calef v W.,* 252

10

Mich. App. 443 (2002)  Historically, at law, a bed-bug[1] infestation is "vermin" as contemplated in the case law and subsequent statutes regarding habitability of a leasehold. (*See* Exhibit 16 )

### a. The vermin agreements are illegal and void *ab initio* pursuant to MCL 125.474

Hence, under Michigan law, the landlord – not a tenant -- has a statutory duty to keep the premises free from bed bugs and other vermin.  MCL 125.474; *See also De Luce v. Fort Wayne Hotel,* 311 F.2d 853 (6th Cir. 1962); *Connors v  Benjamin  J. Magid, Inc.,* 353 Mich. 628 (1958)

Therefore the vermin addendums in this case, as additional contract terms unlawfully imposing the landlord's duty to ameliorate vermin upon the plaintiffs/tenants, are illegal and void *ab initio* under Michigan law.

By the way, as a legal no-brainer, in response to Defendants' allegations that the plaintiffs assumed the condition of vermin by accepting possession of the premises: a tenant's "inspection" does not abdicate the landlord's duty to comply with the law on habitability. MCL 554.139(3)[2]

### 2. The vermin agreements violate the Michigan Truth in Renting Act

Here, the vermin addendum at Plaintiffs' Exhibit 7 violates the following paragraphs of MCL 554.633 (Michigan Truth in Renting Act), to wit:

### *a. No Waiver or Alteration of Remedy under MCL 554.139*



1

[2] This is the Michigan statutory authority for rejection of the common law principal of *caveat lessee* which gave way to the common law, now statutory rule of an implied duty of a landlord to provide a habitable premises which is free of vermin.  *See*  Exhibit 16, *Note: Don't Let Them Bite: Defining the Responsibilities of Landlords and Tenants in the Event of a Bedbug Infestation,* 80 Geo. Wash. L. Rev. 243, fn 61, by Samuel Gilbert (Nov. 2011) (Also an excellent general survey of the history and development of bed-bug law.)

MCL 554.633 provides that the following provision in a rental agreement is illegal:

**(a)**  Waives or alters a remedy available to the parties when the premises are in a condition that violates the covenants of fitness and habitability required pursuant to section 39 of 1846 RS 84, MCL 554.139.

In particular, MCL 554.139 provides:

**(1)**  In every lease or license of residential premises, the lessor or licensor covenants:

**(a)**  That the premises and all common areas are fit for the use intended by the parties.

**(b)**  To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenants wilful or irresponsible conduct or lack of conduct.

**(2)  The parties to the lease or license may modify the obligations imposed by this section where the lease or license has a current term of at least 1 year.**

**(3)**  The provisions of this section shall be liberally construed, and the privilege of a prospective lessee or licensee to inspect the premises before concluding a lease or license shall not defeat his right to have the benefit of the covenants established herein.

Here, the "vermin agreements" fundamentally alter the landlord's duties and remedies in the event of a tenant's default under the rental agreement.  The "vermin agreement" provides that the *tenant* shall:

1. be subject to a 30 day notice to quit,

2. be responsible for the accelerated balance of the contract,

3. be responsible for "all other charge that are associated with the pest control treatment" and

4. that the tenant will "be turned over [to] the Attorney and face eviction for  Non payment of this agreement" and "be responsible for all attorney, legal and filing fee's [sic]" incurred by the landlord.

12

However, here, the original residential lease contracts[3]:

1.    do not provide for summary eviction for costs of vermin abatement,
2.    do not provide for acceleration of debt for failure to pay vermin abatement, and
3.    do not provide for attorney's fees and costs for the tenant's failure to pay the landlord for the cost of abatement of vermin.

Here, the vermin agreement expressly alters the remedies of the tenant on Plaintiffs' statutory right to a habitable premise.  For example, Plaintiff Hendrix has a month to month lease. (Exhibit 2, Hendrix lease)   The vermin agreement deprives her of the remedy to enforce the defendants' statutory duty to keep the premises habitable under MCL 554.139 because it imposes the duty of habitability as to vermin upon her.    Accordingly, the defendants' coercive use of the vermin addendum and its imposition upon Ms. Hendrix of the landlord's statutory duty to keep the premises free from vermin is contrary to MCL 554.139 and hence illegal as a matter of law pursuant to 554.633(a).

Moreover, the "vermin" contract imposes remedies for the landlord not present in the rental agreement, which is contrary to MCL 554.633(a).   Here, MCL 554.139(2) requires the landlord "to comply with the applicable health and safety laws of the state and of the local unit of government" and MCL 125.474 require a landlord to keep the premises free from vermin.

Hence, the "vermin addendum" imposes remedies for the landlord (acceleration of rent, eviction, payment of costs), which are illegal as a matter of law, as vermin remediation is *solely* the duty of the landlord and cannot be imposed on the tenants as a matter of law. *Calef, supra*

Hence, the "vermin agreement" violates the Truth in Renting Act at MCL 554.633(a) by making the tenant pay for landlord's statutory duty under MCL 554.139 duty to remediate vermin or suffer dire sanctions not allowed at law.

---

[3] (Exhibits 2, 3, and 4, Plaintiffs' respective rental contracts)

### b. *No Exculpation of Landlord Liability*

MCL 554.633 provides that the following provision in a rental agreement is illegal:

**(e)** Exculpates the lessor from liability for the lessor's failure to perform, or negligent performance of, a duty imposed by law. ... .

Here, the "vermin agreement" constructively exculpates the landlord from its legal duty under MCL 125.474[4] by imposing the financial liability of vermin remediation on the tenant. The "vermin agreement" expressly imposes the costs[5] of the landlord's breach of duty to keep the premises free from vermin directly upon the tenant under penalty of eviction.

Hence, the "vermin agreement" violates MCL 554.633(b) by imposing the duty of vermin remediation on the tenant and constructively exculpating the landlord's statutory duty to keep the premises free from vermin as required by MCL 125.474. Quite simply, they have no defense.

### C. Plaintiffs do not state a claim under 18 U.S.C. §1962(a) or (b).

18 U.S.C. §1962 has four distinct causes of action at paragraphs (a), (b), (c), and (d) respectively. First, defendants seek dismissal of Plaintiffs' RICO §18 U.S.C. §1962(a) and (b).

However, in the plaintiffs' First Amended Complaint, plaintiffs clearly request relief only under 18 U.S.C. §1962(a), (c) and (d). (Doc. 13, First Amended Complaint, ¶57, 58, and (59))

---

[4] MCL 125.474 Cleanliness of dwellings**.** Sec. 74.Cleanliness of dwellings. Every dwelling and every part thereof shall be kept clean and shall also be kept free from any accumulation of dirt, filth, rubbish, garbage or other matter in or on the same, or in the yards, courts, passages, areas or alleys connected therewith or belonging to the same. The owner of every dwelling shall be responsible for keeping the entire building free from vermin. The owner shall also be responsible for complying with the provisions of this section except that the tenants shall be responsible for the cleanliness of those parts of the premises that they occupy and control.

[5] (Exhibit 7)  The vermin addendum provides that the tenant shall:
1. be subject to a 30 day notice to quit,
2. be responsible for the accelerated balance of the contract,
3. be responsible for "all other charge that are associated with the pest control  treatment" and
4. that the tenant will "be turned over [to] the Attorney and face eviction for Non payment of this agreement" and "be responsible for all attorney, legal and filing fee's [sic]" incurred by the landlord.

Plaintiffs concede that for claims under both §1962(a) (and (b)) the plaintiffs must allege something more than injuries arising from the predicate acts themselves.  Succinctly stated:

> In order to allege injury "by reason of" section 1962(a), a RICO plaintiff must demonstrate that he was injured "by reason of" the use or investment of the income derived form racketeering.  Similarly, in order to allege injury "by reason of" section 1962(b), a RICO plaintiff must demonstrate that the defendants' acquisition or control of an  interstate enterprise injured the plaintiff.

> *Midwest Grinding Co., v Spitz,* 716 F.Supp 1087, 1091 (ND IL, 1989)

Here, Plaintiffs do not allege injuries proximately caused by reason of the "use" of the racketeers' money nor as a result of the defendants' "acquisition or control" of the enterprise.

Rather, Plaintiffs allege damages caused in fact by the predicate acts themselves, but proximately caused by reason of the conduct of the racketeering operation under §1962(c).

Accordingly, the plaintiffs agree that the complaint fails to state a claim under 18 U.S.C. §1962(a) (and (b)), and those claims may be dismissed without prejudice.

### D.  Plaintiffs do state RICO claims under 18 U.S.C §1962(c) and (d)

In a series of disjointed and random arguments, Defendants allege that Plaintiffs have failed to state a RICO claim under §1962(c) or (d).

The U.S. Supreme Court recently admonished the lower courts that it has "repeatedly refused to adopt narrowing constructions of  RICO in order to make it conform to a preconceived notion of what Congress intended to proscribe."  *Bridge Phoenix Bond & Indem., Co.* 128 S. Ct. 2131, 2145 (2008)[6]

Defendant properly recites the elements of a claim under §1964(c) are:

---

[6] "See, *e.g., National Organization for Women, Inc.* v. *Scheidler*, 510 U.S. 249, 252, 114 S. Ct. 798, 127 L. Ed. 2d 99 (1994) (rejecting the argument that "RICO requires proof that either the racketeering enterprise or the predicate acts of racketeering were motivated by an economic purpose"); *H. J. Inc.* v. *Northwestern Bell Telephone Co.*, 492 U.S. 229, 244, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (rejecting "the argument for reading an organized crime limitation into RICO's pattern concept"); *Sedima, S. P. R. L.* v. *Imrex Co.*, 473 U.S. 479, 481, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) (rejecting the view that RICO provides a private right of action "only against defendants who had been convicted on criminal charges, and only where there had occurred a 'racketeering injury'")."  *Bridge v. Phx. Bond & Indem. Co.,* 553 U.S. 639, 660 (2008)

1.  conduct,

2.  of an enterprise,

3.  through a pattern,

4.  of racketeering activity.

*Heinrich v Waiting Angels Adoption Services, Inc.* 668 F.3d 393 (6th Cir. 2012)

Moreover, Plaintiff must prove that a defendant participated, directly or indirectly, in "some part" of the operation or management of the enterprise. *Reves v Ernst & Young,* 507 U.S. 170, 179-183

"Enterprise" is statutory definition at 18 USC §1961(4), to wit:

**(4)** "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

An association in fact enterprise requires a certain amount of organizational structure, which eliminates simple conspiracies from RICO. *VanDenBroeck v CommonPoint  Mortg. Co.* 553 U.S. 639 (2008)

To prove conspiracy, the plaintiff must prove the substantive claim under paragraphs (a), (b), or (c), and then "the existence of an illicit agreement to violate the substantive RICO provision." *United States v Sinito,* 723 F.2d 1250, 1260 (6th Cir. 1983)

## 1.  Plaintiffs sufficiently allege an "enterprise" under *Boyle*

Defendant understates and misstates the law on what constitutes a sufficient enterprise for a RICO claim.

In *Boyle, infra* the U.S. Supreme Court broadly construed the definition of an "enterprise" for a RICO claim, opining:

The statute does not specifically define the outer boundaries of the "enterprise" concept but states that the term "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated

in fact although not a legal entity." § 1961(4). This enumeration of included enterprises is obviously broad, encompassing "*any . . .* group of individuals associated in fact." *Ibid.* (emphasis added). The term "any" ensures that the definition has a wide reach, see, *e.g., Ali* v. *Federal Bureau of Prisons*, 552 U.S. 214, 218-219, 128 S. Ct. 831, 169 L. Ed. 2d 680 (2008), and the very concept of an association in fact is expansive. In addition, the RICO statute provides that its terms are to be "liberally construed to effectuate its remedial purposes." § 904(a), 84 Stat. 947, note following 18 U.S.C. § 1961; see also, *e.g., National Organization for Women, Inc.* v. *Scheidler*, 510 U.S. 249, 257, 114 S. Ct. 798, 127 L. Ed. 2d 99 (1994) ("RICO broadly defines 'enterprise'"); *Sedima, S. P. R. L.* v. *Imrex Co.*, 473 U.S. 479, 497, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) "RICO is to be read broadly"); *Russello* v. *United States*, 464 U.S. 16, 21, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983) (noting "the pattern of the RICO statute in utilizing terms and concepts of breadth").

In light of these statutory features, we explained in *Turkette* that  "an enterprise includes any union or group of individuals associated in fact" and that RICO reaches "a group of persons associated together for a common purpose of engaging in a course of conduct." 452 U.S., at 580, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246. Such  an enterprise, we said, "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.*, at 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246. Notwithstanding these precedents, the dissent asserts that the definition of a RICO enterprise is limited to "businesslike entities." See *post*, at 952, 173 L. Ed. 2d, at 1279-1282 (opinion of Stevens, J.). We see no basis to impose such an extratextual requirement.

*Boyle v. United States*, 556 U.S. 938, 944-45 (2009)

In short, to establish an association-in-fact enterprise Plaintiffs must prove:

1. an ongoing organization with some sort of framework or superstructure for making and carrying out decisions;

2. that the members of the enterprise functioned as a continuing unit with established duties, and

3. that the enterprise was separate and distinct from the pattern or racketeering activity in which it engaged.

*Ouwinga v Benistar 419 Plan Servs.*, 694 F.3d 783, 793 (6th. Cir. 2012)

Additionally, the enterprise "must have three structural features":

1. a purpose;
2. relationships amount those associated with the enterprise,
3. longevity sufficient to permit these associates to pursue the enterprise's purpose.

*Id.* at 794

In *Ouwinga,* the appellate court reversed the trial court's dismissal of the plaintiff's §1962(c) RICO claim for lack of showing of an enterprise. In reversing the trial court, Judge Stanch observed:

> The Amended Complaint alleges an organizational structure that satisfies the standard in *Boyle*. It delineates the specific roles and relationships of the Defendants, alleges the enterprise functioned at least five years, and alleges it functioned for the common purpose of promoting a fraudulent welfare benefit plan to generate commissions and related fees. That pattern of activity is sufficient to permit a jury to infer the existence of an enterprise. *Id.* at 794-795

Here, just like the plaintiffs in *Ouwinga,* Plaintiffs make the following allegations, *inter alia¸* in their First Amended Complaint:

....

**50.** Defendants are an association-in-fact enterprise to wit:

**a**. The purpose of the enterprise is to generate additional income and savings from poor, disabled, and elderly persons, in excess of their income-based lease payments, for the benefit of Defendants, and further to relieve the landlord of the statutory duty, cost and burden of exterminating vermin, by imposing those costs on the plaintiffs. The enterprise allows Orkin to make non-competitive bids per apartment for vermin

abatement, and then Premier REM LLC uses the threats and extortion as stated above, to force Plaintiffs to agree to be contractually bound to pay Orkin the monies due, while simultaneously relieving Premier REM, LLC of the cost and burden of its statutory duty to keep the premises habitable and free of vermin, and thus reducing the operating costs and increasing the return on investment for Akin and Premier Saginaw I, LLC.

**b**. Defendants have long, interconnected, and overlapping relationships that span sufficient duration or indicate a design for continuing or open-ended continuity.

**c**. The racketeering is of sufficient duration for the enterprise to repeatedly pursue its purpose, in that most residential leases, where Defendants are landlords, have terms of one year or less, and Defendants have subjected new persons on an annual basis for several years to enter into vermin addendums, and the scheme has open-ended continuity as new tenants are contracted; and for existing tenants who have recurring bedbugs. For example, since this case was filed, consent to a new "vermin addendum" was demanded of Ebony Hendrix for further treatment.

**51.**   The racketeering activity of the defendants is coordinated and ongoing in such a way that they function as a continuing unit, to wit:

  **a.**   Calvin Akin and Premier Saginaw I, LLC direct the enterprise;

  **b.**   Premier REM LLC and Orkin knowingly carry out the affairs of the enterprise;

  **c.**   On complaint of a tenant, Orkin inspects and creates an invoice for Premier REM LLC, who in turn, and known to Orkin, uses the extortion methods described above to obtain a contractual agreement from Plaintiff to pay Orkin for its non-competitive bid for abatement, while relieving itself of the statutory duty to keep the premises habitable and free of vermin.

Here in the case *sub judice*, just as in *Ouwinga,* Plaintiffs have made specific allegations about: 1) how the enterprise operated, 2) its purpose, and 3) the roles of each of the defendants. The allegations are more than conclusory, and allege a deliberate and mechanical method of how the defendants work in unison to compel poverty-stricken tenants to pay monies to Orkin for abatement of vermin which legally is the landlord's duty to pay. Further, the allegations clearly

illustrate the purpose of the enterprise: the landlord saves money, Orkin gets captive customers, and the landowner saves on the operating costs for abatement.

The Court must deny Defendants' motion to dismiss because Plaintiffs have sufficiently stated and articulated an "enterprise" under RICO.

### 2. Defendants are sufficiently distinct under *West Hills Farms, LLC* and all Defendants meet the "operation or management" test.

#### *Distinctness*

Defendant alleges that contrary to *Begala v PNC Bank, Ohio, Na. Ass'n,* 214 F.3d 776, 781 (6th Cir. 2000), the plaintiffs have failed to allege sufficient distinctness of the non-Orkin defendants, to wit:

> Throughout the Complaint, the Plaintiffs refer to Calvin Akin, Premier Saginaw I, LLC, and Premier Real Estate Management, LLC as if they are one entity; these defendants form an enterprise that consists only of its own subdivisions, agents, or members.

Apparently Defendants argue for dismissal for lack of "distinctness" because Defendant reads the complaint as the defendants' enterprise consisting of "only its own subdivisions, agents, or members ... [who] were merely conducting their own affairs" and not that of the enterprise.

For example, Defendants argue co-defendant Orkin is merely employed by or associated with the other defendants and "took no direction from Defendants; nor is any such direct (sic) alleged."

In 2013, the Sixth Circuit Court of Appeals revisited and surveyed 20 years of case law[7] on the distinctness requirement.  *West Hills Farms, LLC, infra* at 490-493  Now, a trial court is to

---

[7] The court noted: "the number of different approaches to the distinctness analysis roughly mirrors the number of case that have addressed it.  The analysis is so fact-intensive that a generic test is difficult to formulate. The cases run the gamut ... . Our approach has not been completely clear." *W. Hills Farms, LLC, infra* at 491  "Out of the

filter the facts in support of the distinctness requirement through two clearly enunciated legal principles, to wit:

1)  individual defendants are always distinct from corporate enterprises because they are legally distinct entities, even when those individuals own the corporations or act only on their behalf; and

2)  corporate defendants are distinct from RICO enterprises when they are functionally separate, as when they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity.

*West Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Lease, Litig.),* 727 F.3d 473, 492 (6th Cir. 2013)

Here, Plaintiff's complaint makes a *prima facie* showing of distinctness.  First, Calvin Akin is plead as an individual, separate from the corporate entities. (Doc. 13, First Amended Complaint, ¶¶ 2-5)   Therefore, Plaintiffs' allegations satisfy the first principle. *W. Hills Farms, LLC, supra*

Second, the corporate enterprises are plead as being functionally separate within the enterprise due to their different roles within the enterprise.  For example, at ¶51 of the First Amended Complaint the plaintiffs allege:

**b.**  Calvin Akin and  Premier Saginaw I, LLC direct the enterprise;

**c.**  Premier REM LLC and Orkin knowingly carry out the affairs of the enterprise;

**d.**  On complaint of a tenant, Orkin inspects and creates an invoice for Premier REM  LLC, who in turn, and known to Orkin, uses the extortion methods described above to obtain a contractual agreement from Plaintiff to pay Orkin for its  non-competitive  bid  for  abatement,  while  relieving  itself  of  the statutory duty to keep the premises habitable and free of vermin.

---

meandering and inconsistent case law from this and other circuits, as well as the Supreme Court's decision in *Cedric Kushner*, two important principles emerge[d] . ... ."  In *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) the court held that: a plaintiff "must allege and prove the existence of two distinct entitles: (1) a 'person'; and (2) an "enterprise that is not simply the same 'person' referred to by a different name."

Further allegations about how the defendants' racket operates and the roles of each defendant can be found at ¶50a. of the First Amended Complaint.  The litany of acts comprising the affairs of the enterprise are enumerated in part at ¶32 of the First Amended Complaint.

Clearly, under the principles stated in *W. Hills Farms, LLC, supra,* Plaintiff did plead allegations to support distinctness as a matter of law[8].

### *Operation Or Management Test*

Additionally, Plaintiffs plead Orkin as a distinct legal entity, unrelated (except by the enterprise) to Calvin Akin.  Defendants try to analogize the accounting firm in *Reves, supra*, with the pest control company (Orkin) in this case, as similarly being a mere, customary business association without proof of "operation or management" by the defendant in the enterprise.

In *Reves v Ernst & Young,* 507 U.S. 170 (1993), an accountant failed to note a fatal fact regarding the capitalization of an energy investment company on the condensed financial statements, although it clearly noted the fatal financial fact in the comprehensive financial statement – and the plaintiffs/investors were in fact advised to review the comprehensive report

---

[8]     In fact, the old RICO idea that a parent corporation and its subsidiaries do not satisfy the distinctness requirement, almost as an irrebutable presumption, because they necessarily cannot form an enterprise distinct from the parent, is a dead rule.  As noted by Judge Clay: " ... [T]he distinctness requirement may be satisfied when the parent corporation uses the separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme. *See Bucklew v. Hawkins, Ash, Baptie & Co*., 329 F.3d 923, 934 (7th Cir. 2003) (finding that a corporate defendant is distinct from an enterprise consisting of itself and its subsidiaries when "the enterprise's decision to operate through subsidiaries rather than divisions somehow facilitate[s] its unlawful activity"); *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 263-64 (2d Cir. 1995) (finding that related corporations with distinct markets and roles in the scheme were distinct from the RICO enterprise comprised of each of them together). It would be strange indeed to absolve a parent corporation of liability for doing precisely what RICO was designed to prevent: the use of an association of legally distinct entities "as a vehicle through which unlawful . . . activity is committed." *Cedric Kushner*, 533 U.S. at 164 (internal quotation marks omitted). *W. Hills Farms, LLC, supra* at 493

In the case *sub judice*, the plaintiffs do not allege the corporate defendants are necessarily subsidiaries of one another nor any one defendant a "parent" corporation.  However, admittedly all of the (non-Orkin) corporate defendants appear to be connected to the individual defendant, Calvin Akin.

Again, to the extent that Calvin Akin claims lack of distinctness from his corporate entities, that fact is insufficient by itself to defeat a RICO claim for lack of distinctness.  *See Cedric Kushner Promotions Ltd., v King,* 533 U.S. 158 (2001) (*where* "the Court found that the defendant, Don King, was distinct from his wholly owned corporation for the purpose of RICO.  The court found that because the individual defendant and his corporation were separate legal entiles with 'different rights and responsibilities," the two were sufficiently distinct.  "[W]e can fin nothing in [RICO] that requires more 'separateness' than that.'" *West Hills Farms, LLC, supra*, at 492)

in any event. Predictably, the investors lost money and sued. The accountant was named a RICO defendant.

To resolve whether the accountant was a proper RICO defendant, the court interpreted the meaning of the words "conduct" and "participate" in §1962(c). The court adopted the "operation or management" test. Optimistically noting that the test would be "easy to apply" Justice Blackmun explained:

> Once we understand the word "conduct" to require some degree of direction and the word "participate" to require some part in that direction, the meaning of § 1962(c) comes into focus. In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply.
>
> *Reves*, *supra*, at 179 (1993)

Here, Plaintiff alleges that Orkin creates invoicing and bidding it knows will be collected through the methods of the enterprise, and in fact benefits from the arrangement by its exclusive right to sell vermin abatement services to the defendants' tenants -- and get paid by the tenants by the threats of coercion of the landlord. (Doc. 13, First Amended Complaint, ¶¶50-51)

Clearly, allegations that Orkin was creating invoicing for tenants, at the direction of the landlord, for captive customers, and getting those invoices paid by the coercion of the landlord, qualify as "some" part in the operation or management of the enterprise. On the same factual

allegations, all of the defendants are sufficiently alleged to have participated in the "operation or management" of the enterprise[9].

This court must reject Defendants' arguments that Plaintiffs' claims fail the distinctness test and the operation or management test.

### 3. Plaintiffs allegations satisfy the causation requirements under 18 U.S.C. §1962(c) and (d).

Under §1962(c), the plaintiff need only allege damages to her business or property "by reason of" "the conduct" of the enterprise's affairs, which necessarily includes damages from the predicate offenses. §1962(c)

Accordingly, the plaintiff in *Midwest Grinding, supra* survived summary judgment on the pleadings as to one defendant because it "sufficiently plead the requisite [predicate offenses, in that case] mail fraud violations ... ." *Id.* at 1093

§1962(c) provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Under §1962(c), a plaintiff must show both "but for" causation and proximate cause; and under §1962(d), the plaintiff need only show that the defendant agreed "that another violated §1962(c) by committing two acts of racketeering activity" to wit:

A 'pattern of racketeering activity' requires at least two acts of 'racketeering activity, ... . Thus, to prove that a defendant violated § 1962(c), it is necessary for the plaintiff to prove that the defendant committed two predicate offenses. But to

---

[9] Plaintiffs believe they have alleged sufficient facts, and the reasonable inferences therefrom in their favor, to show all of the defendants meet the operation or management test; and are sufficiently agreed by an express or implied agreement to satisfy the conspiracy claim at §1962(d). If the allegations are insufficient, then Plaintiffs note that their affidavits filed Exhibits 13-15 recite in much greater detail the interactions of the defendants in perpetuating their predatory scheme, and would request leave to amend.

violate § 1962(d), a defendant need only "agree[] that another violate § 1962(c) by committing two acts of racketeering activity." *United States v. Joseph,* 781 F.2d 549, 554 (6th Cir. 1986).

A plaintiff asserting a §1964(c) action must show that the RICO violation she alleges caused her injury. Both "but for" and proximate cause are required. *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268-69, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992). In terms of proximate causation, "the central question … is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006).

*Grange Mut. Cas. Co. v. Mack*, 290 F. App'x 832, 835 (6th Cir. 2008)

The U.S. Supreme Court discussed the difference between "but for" and proximate causation in *Holmes, supra.* The case involved an insurer[10] who had to pay claims against its insured stockbrokers for damages arising from the brokers' wrongful manipulation of stock prices. *Id.* at 261-265   The insurer sued the brokers, to include claims under RICO, because the brokers' breaches of duty triggered the plaintiff's duty to pay claims to the damaged investors and the insurer claimed standing under a right of subrogation to the damaged investors.  *Id.*

The district court dismissed the plaintiff's RICO claim, *inter alia,* for lack of proximate cause. *Id.* at 263-264  The Ninth Circuit Court of Appeals reversed, finding (in effect) sufficient "but for" causation, because although the causal relationship between the broker and the plaintiff's injury was weak, the focus should have been on the casual relation between the plaintiff's injury and the acts of the defendants' co-conspirators. *Id* at 265

---

[10] Actually, the plaintiff was a private, non-profit corporation (the "SIPC") established under federal law to insure customers of licensed security dealers, to wit: The Securities Investor Protection Act of 1970 (SIPA) at 15 U.S.C. §§78aaa-78lll and the Securities Exchange Act of 1934.

On appeal, the Supreme Court reversed on proximate cause and remanded. *Id.* at 276 First, the court rejected a singular "but for" analysis because it found it "very unlikel[y] that Congress meant to allow all factually injured plaintiffs to recover" under RICO. *Id.* at 266

The court continued in noting that the insured's claims were based on (ambiguous, but accepted for *arguendo*) a common law right of subrogation, in that having paid the investors' claims for damages caused by the conspiracy, the insured could recover against the broker. *Id.* at 271   Hence, since "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step" the court found the plaintiff/insurer's damages too attenuated, and thus, failing to be a "direct-injury" required for proximate causation. *Id.* at 272-273  (Interestingly, by definition, a subrogation claimant does not suffer a direct injury.)

Here, the plaintiffs allege "but for" causation, but importantly, make a multiplicity of allegations of specific and direct-injury to support proximate causation.

Obviously, "but for" the landlord's failure to mitigate vermin and forcing the plaintiffs to enter into the vermin agreements by their acts of extortion and threats, the plaintiffs would not have been damaged by the costs of vermin remediation, the fear of being homeless, and the indignity of being forced to live in the defendants' vermin-infested apartments with their children.

Here, the plaintiffs allege direct-injury such that their injuries were proximately caused by the RICO enterprise.  All of the plaintiffs' allegations are allegations of direct injury – lost money, fear of homelessness, loss of personal property, etc.  (*See e.g.,* Doc. 13, First Amended Complaint, ¶¶52-60)   Here, the defendants' RICO enterprise existed precisely to directly collect the cost of vermin abatement directly from the plaintiffs – or they would be directly thrown into the road, homeless with children, if they did not pay.

26

The court must deny the plaintiffs' motion to dismiss; Plaintiffs have alleged sufficient proximate and "but for" causation.

**WHEREFORE** Plaintiffs request that this Honorable Court deny the defendants' motion to dismiss Plaintiffs' RICO claims under §1962(c) and (d), award them the costs and fees incurred in this matter, and grant other such relief as the Court deems just and equitable.

September 21, 2015

/s/ Todd H. Nye
Todd H. Nye (P59301)
 Nye & Associates, PLLC
Attorney for  Plaintiffs
3975 W. Federal Hwy., Ste. 1
Roscommon, MI 48653
(989) 821-1225 tx.
(989) 821-1133 fx.
enotice@nyelaw.org