UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EBONY HENDRIX, et al.,

                Plaintiffs,                         Case No. 15-cv-12364

v                                         Honorable Thomas L. Ludington

CALVIN AKIN, et al.,

                Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING PLAINTIFFS' COMPLAINT

When Congress first enacted the Racketeer Influenced and Corrupt Organizations Act in 1970, it likely did not envision that the act would be invoked in a lessor-lessee dispute over which party should bear the cost of exterminating a bedbug infestation. Yet that is the case that is before us. Lessee-Plaintiffs Ebony Hendrix, Kelly Spiller, and Felicia McDaniel filed the above captioned action on July 1, 2015, alleging that lessor-Defendants' ongoing attempts to force them to bear the costs of exterminating a bedbug infestation violates both federal and state law. Of the eight claims Plaintiff's plead, only their first claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") arises under federal law, and thus furnishes subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

Defendants Calvin Akin, Premier Real Estate Management, LLC, and Premier Saginaw I, LLC (the "non-Orkin Defendants") now move to dismiss Plaintiffs' RICO claim under Rule 12(b)(6), alleging that Plaintiffs have failed to state a claim upon which relief can be granted. Plaintiffs have not pled facts sufficient to raise a plausible claim that Defendants comprised an

enterprise engaged in a pattern of racketeering activities, and therefore Plaintiffs' RICO claim will be dismissed. Because the Court no longer has subject matter jurisdiction over the remainder of the action, Plaintiffs' state law claims will be dismissed without prejudice, and Plaintiff will be allowed to refile them in State Court.

## I.

Although styled as a 12(b)(6) motion to dismiss for failing to state a claim upon which relief can be granted, Defendant Akin includes a variety of information and exhibits outside of the pleadings. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Sixth Circuit has explained that any such conversion "should be exercised with great caution and attention to the parties' procedural rights." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009). Plaintiffs, who have also attached a number of exhibits and affidavits to their response, specifically object to a conversion of Akin's 12(b)(6) motion into a Rule 56 motion for summary judgment.

The pleadings are sufficient to resolve the present issue of whether Plaintiffs have properly pled a RICO claim under 18 U.S.C. § 1961 *et seq.* Matters presented by the parties that are outside of the pleadings will therefore be excluded, and Plaintiffs' allegations will be reviewed under the deferential Rule 12(b)(6) standard of review.

## II.

Applying the Rule 12(b)(6) standard of review, the facts are taken from the allegations in Plaintiff's amended complaint. Plaintiffs are residents of Saginaw County, Michigan, and are tenants of Autumn Ridge Apartments. Plaintiffs all qualify for their tenancy based on income, and receive federal housing assistance. Compl. ¶ 1.

Defendant Calvin Akin is a resident of Wisconsin. *Id*. at ¶ 2. Akin is the registered agent for both Defendant Premiere Real Estate Management, LLC ("Premier REM"), registered in Wisconsin, and Defendant Premier Saginaw I, LLC ("Premier Saginaw"), registered in Michigan. *Id*. at ¶¶ 3-4.

According to Plaintiffs, Autumn Ridge was originally owned by The Crossings of Buena Vista Limited Dividend Housing Associations Limited Partnership ("The Crossings"). *Id*. at ¶ 10.  The Crossings conveyed its interest in Autumn Ridge to Defendant Premier Saginaw in 2008. *Id*. at ¶ 12.  The Crossings then filed a Certificate of Cancellation with the State of Michigan. *Id*. at ¶ 13.

Plaintiffs executed their leases at Autumn Ridge in the years of 2014 and 2015. *Id*. at ¶ 14. Although the leases still identify the lessor as The Crossings, Plaintiffs allege that Defendant Premier Real Estate Management is the actual lessor.[1] *Id*. at ¶¶ 16-19.  In their relevant parts, Plaintiffs' leases provide:

   a. The premises are conclusively presumed to be in good condition at move in, unless tenant specifies objections on a move-in list returned to the landlord within 7 days.

   b. Tenant's noncompliance with any covenant in this lease is a default. If tenant defaults, landlord may pursue all remedies legally permitted, including termination of this tenancy….

   c. MAINTENANCE Tenant shall use and maintain the premises in accordance with all application policies, sanitary, and other regulations imposed by governmental authorities.  Tenant shall also maintain the premises in a neat and orderly manner. Tenant will observe all reasonable regulations and requirements of underwriters concerning use and conditions of the premises tending to produce fire hazard and insurance rates.  Tenant shall pay for the repairable damage to the premises and structure of which it is a part, including fire and flood damage caused by tenant, his guests or invitees; they shall reimburse landlord for all permit, inspection, and certification costs incurred because of their noncompliance with this lease or applicable law; and they shall reimburse landlord for all damages resulting from not reporting the need for repair or maintenance in a reasonably and timely manner.

---

[1] Plaintiffs do not explain their allegation that Premier REM is the lessor in light of the fact that Premier Saginaw was allegedly the entity that purchased Autumn Ridge from The Crossings.

> Nothing in this clause shall waive or lessen Landlord's obligation to maintain and repair the premises under Michigan law, but Landlord is not liable for any loss that occurs to tenant because of Landlord's action in reasonably fulfilling his obligations hereunder.

*Id*. at ¶ 21.

After taking possession of the leaseholds, Plaintiffs allege they became aware that the leaseholds were or became infested with bedbugs, and that the lessor knew or should have known of the bedbug infestation. After informing Premier Real Estate Management of the bedbugs, Premier REM forced Plaintiffs to consent to and sign Vermin Addendums, requiring Plaintiffs to bear all of the costs of the bedbug infestation, pay all extermination costs to Defendant Orkin, dispose of personal property, and comply with any of Defendant Orkin's instructions. *Id*. at ¶¶ 25-26. The Vermin Addendums also provided that any breach of the agreement could result in immediate acceleration of all lease payments reduced to money judgment, summary eviction plus costs and attorney's fees, and/or a money judgment for Defendant Orkin for any remaining money due. *Id*. at ¶ 27. Finally, Plaintiffs were informed by agents and employees of Premier REM that a breach of the Vermin Addendums could result in a negative Section 8 report to future landlords, "thus blacklisting Plaintiffs from future Section 8 housing." *Id*. at ¶ 28. Plaintiffs allege that the Vermin Addendums resulted in charges of $1,000 to $1,200 per Plaintiff at the rate of $50 a month. *Id*. at ¶ 32.

Pursuant to the Vermin Addendums, Plaintiffs disposed of personal property and complied with multiple demands and directives from Defendant Orkin. *Id*. at ¶ 35. Plaintiff has also faced repeated demands from the non-Orkin Defendants to pay money under the Vermin Addendums to cover the costs of Defendant Orkin's extermination. *Id*. at ¶ 36. Plaintiff Spiller, specifically, received a Notice of Demand for Possession for Non-Payment of Rent because she has not paid Defendants pursuant to the Vermin Addendums.

- 4 -

Plaintiffs commenced the present action on July 1, 2015. ECF No. 1.  In their complaint, Plaintiffs allege eight claims: (1) Violation of RICO with predicate offenses of (a) extortion under Michigan law and (b) Violations of Hobbs Act;  (2) Violation of the Michigan Consumer Protections Act; (3) Breach of Contract; (4) Specific Performance of Lease Contract; (5) Negligent breach of statutory duty of habitability; (6) Negligent failure to warn; (7) Violation of the Michigan Truth in Renting Act; and (8) Violation of the Michigan Housing Law, MCL 125.474.

## III.

Defendant Akin now moves to dismiss Plaintiffs' RICO claim.  This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert*, 517 F.3d at 439. The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570).

## A.

RICO imposes both criminal and civil liability on persons engaged in prohibited activities, as defined in 18 U.S.C. § 1962.  Each prohibited act requires, as a necessary element, a

pattern of racketeering activity or a collection of unlawful debt. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989). "Racketeering Activity" is defined as "any act or threat involving specified state-law crimes, any act indictable under various specified federal statutes, and certain federal offenses." *Id*. (internal quotations and citations omitted). "Unlawful Debt" – inapplicable in this case – refers only to debts incurred or contracted through illegal gambling activity or usurious lending. 18 U.S.C. § 1961(6). A civil litigant that successfully demonstrates an injury to his business or property caused by a violation of 18 U.S.C. § 1962 is entitled to treble damages. 18 U.S.C. § 1964(c).

**i**.

Plaintiffs first allege that Defendants' conduct constitutes a prohibited act under § 1962(a). Under that section:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C.A. § 1962(a). The Sixth Circuit has held that, in order to state a claim under § 1962(a), "a plaintiff must plead a specific injury to the plaintiff caused by the investment of income into the racketeering enterprise, distinct from any injuries caused by the predicate acts of racketeering." *Vemco, Inc. v. Camardella*, 23 F.3d 129 (6th Cir. 1994).

Here, Plaintiffs claim that Defendants used or invested some of the income from the vermin addendums in the continued operation of their enterprise and legitimate businesses, which affected interstate commerce. Pl. Compl. ¶ 56. In *Vemco*, the Sixth Circuit found such an allegation insufficient to successfully plead an investment injury. *Vemco*, 23 F.3d at 133 (finding an allegation that income obtained through racketeering activity "was used, directly or indirectly,

in the operation of the enterprise" insufficient to plead an investment injury).  Because Plaintiffs

have not pleaded an investment injury, their claims under § 1962(a) will be dismissed.

**ii.**

Plaintiffs also allege that Defendants' conduct is a prohibited act as set forth in § 1962(c).

That section provides:

> It shall be unlawful for any person employed by or associated with any enterprise
> engaged in, or the activities of which affect, interstate or foreign commerce, to
> conduct or participate, directly or indirectly, in the conduct of such enterprise's
> affairs through a pattern of racketeering activity….

18 U.S.C.A. § 1962(c).  To satisfy its burden of showing a violation of the statute, a Plaintiff

must allege each of the following elements: "(1) conduct (2) of an enterprise (3) through a

pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496, (1985).

**a.**

As defined by the statute, a RICO enterprise is "any individual, partnership, corporation,

association, or other legal entity and any union or group of individuals associated in fact

although not a legal entity." 18 U.S.C. § 1961(4). "[A]n association-in-fact enterprise must have

at least three structural features: a purpose, relationships among those associated with the

enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.

*Boyle v. United States*, 556 U.S. 938, (2009). Plaintiffs allege that Defendants' together function

as a coordinated, continuing unit in which Calvin Akin and Premier Saginaw direct the enterprise

and Premier REM and Orkin knowingly carry out the affairs of the enterprise. Compl. ¶ 51.

Plaintiffs allege that Orkin inspects and creates an invoice for Premier REM LLC after a tenant

complains about a bedbug problem, and that Premier REM "in turn and known to Orkin, uses the

extortion methods described above to obtain a contractual agreement from Plaintiff to pay Orkin

for its non-competitive bid for abatement, while relieving itself of the statutory duty to keep the premises habitable and free of vermin." *Id*.

In *Reves v. Ernst & Young*, 507 U.S. 170 (1993), the Supreme Court considered whether an outside professional could be found liable under § 1962(c) for the acts of an enterprise he provided services to. The Court held that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs [under] § 1962(c), one must participate in the operation or management of the operation itself." *Reves*, 507 U.S. at 185. "[L]iabilitiy depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs. *Id*. The Supreme Court concluded that an outside accountant could not be found liable under § 1962(c), because preparing an entity's financial statements was not sufficient conduct or participation in the operation or management of that entity within the meaning of the statute. *Id*. at 186. The Sixth Circuit has directed that the conduct element can also be satisfied by a showing that a defendant knowingly carried out the directives of an enterprise. *See Ouwinga v. Benistar 419 Plan Services, Inc*., 694 F.3d 783, 792 (6th Cir. 2012).

Here, Plaintiffs have not stated a § 1962(c) claim against Defendant Orkin. Plaintiffs have not alleged that Defendant Orkin did anything other than conduct its own business affairs as an outside professional. There is no allegation that Defendant Orkin was involved in the creation or execution of the Vermin Addendums, or that it played any role in threatening to evict or "blacklist" Plaintiffs from future Section 8 housing. Plaintiff alleges only that Defendant Orkin provided professional extermination services, and that Defendant knew that the lessors intended the lessees to bear the costs of such services. As a matter of law, these allegations do not give rise to liability under § 1962(c).

Furthermore, even if Orkin knew Defendants were allocating the extermination costs to Plaintiff, Orkin could not have known any such allocations were unlawful. *C.f. Ouwinga,* 694 F.3d at 792 (imposing liability where outside defendants knew or should have known they were contributing to unlawful conduct). That is because the proper allocation of bedbug extermination costs is an unsettled area of Michigan law. In fact, two bills were introduced in the Michigan legislature this year to address this uncertainty over whether lessees or lessors should properly bear the cost of exterminating bedbugs. *See* Mich. Senate Bill 0294 (2015); Mich. House Bill 4520 (2015).

Plaintiffs have also failed to allege that the non-Orkin Defendants together constitute an enterprise. Plaintiffs' bare assertion that "Calvin Akin and Premier Saginaw direct the enterprise" is insufficient to state a plausible RICO claim. Plaintiffs have provided no explanation as to how Calvin Akin and Premier Saginaw direct the alleged enterprise, and have pleaded no facts in support of such a claim. The fact that an individual is a registered agent for more than one business entity, without more, is not sufficient for a finding that the individual and those entities constitute an enterprise for RICO purposes. Such a finding would both impermissibly expand the scope of RICO and impermissibly undercut the presumption that limited liability companies operate as their own "persons" under Michigan law, distinct and separate from their owners and related entities. *Hills and Dales Gen. Hosp. v. Pantig*, 812 N.W.2d 793, 797 (Mich. Ct. App. 2011).

Plaintiffs only remaining allegation is that Premier REM, a single entity, has unlawfully attempted to collect payment from Plaintiffs to cover the costs of bedbug extermination. This is insufficient to allege an enterprise under 18 U.S.C. § 1961(4). *See Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000) (holding that an entity cannot liable under §

1962(c) "for participating in the affairs of an enterprise that consists only of its own subdivisions, agents or members.").

### b.

Even if Plaintiffs properly alleged the non-Orkin Defendants constituted an enterprise, Plaintiff has failed to show they engaged in a pattern of racketeering activity. Pursuant to the statute, a "pattern of racketeering activity requires at least two acts of racketeering activity," § 1961(5). The Supreme Court has instructed that the alleged acts must be related to one another, and amount to or pose a threat of continued criminal activity. *H.J.,* 492 U.S. at 239. The Court further explained that acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. at 240.

Plaintiffs have alleged two predicate acts of racketeering activity. As a first predicate act, Plaintiffs allege extortion in violation of MCL 750.213. As a second predicate act, Plaintiffs allege violations of the Hobb's Act, 18 U.S.C. § 1951(a). Because Plaintiffs cannot claim that Defendants' conduct was wrongful or in reckless disregard of the law, or that it affected interstate commerce in any way, Plaintiffs have failed to state a § 1962(c) claim.

### i.

Plaintiffs first argue that Defendants' actions constitute extortion in violation of MCL 750.213. MCL 750.213 makes it a felony to "orally or by any written or printed communication maliciously threaten any injury to the person or property…with intent thereby to extort money or any pecuniary advantage whatever." *Id*. The Michigan Supreme Court has recently held that the Act applies with equal force whether or not the demanded act is of serious consequence to the victim. *People v. Harris*, 845 N.W.2d 477 (Mich. 2014). However, in order for a threat to be

actionable, it must be maliciously made. *Id*. at 487.  Michigan defines malice as either (1) the intent, without justification or excuse, to commit a wrongful act; or (2) reckless disregard of the law or of a person's legal rights. *Id*.

As a matter of law, Plaintiffs cannot show that Defendants' acts were malicious under either definition. First, Plaintiffs cannot allege that Defendants' threats were in reckless disregard of Plaintiffs' legal rights because the allocation of bedbug extermination costs is an unsettled area of Michigan law.  The statute setting forth the duties lessor's and lessee's bear regarding the cleanliness of dwellings, MCL 125.474, is ambiguous as to this point. The statute provides as follows:

> Every dwelling and every part thereof shall be kept clean and shall also be kept free from any accumulation of dirt, filth, rubbish, garbage or other matter in or on the same, or in the yards, courts, passages, areas or alleys connected therewith or belonging to the same. The owner of every dwelling shall be responsible for keeping the entire building free from vermin. The owner shall also be responsible for complying with the provisions of this section except that the tenants shall be responsible for the cleanliness of those parts of the premises that they occupy and control.

*Id*.  The last two sentences of the statute are currently at issue. Plaintiff alleges that the lessor has the duty of "keeping the entire building free from vermin," and thus Defendants bear the costs of exterminating bedbugs.  Defendants, on the other hand, allege that because lessees are "responsible for the cleanliness of those parts of the premises that they occupy and control" Plaintiffs bear the costs of exterminating bedbugs.  Recognizing this ambiguity, as earlier noted, the Michigan Legislature has introduced two bills this year to provide clarity regarding which party should properly bear the cost of exterminating bedbugs. *See* Mich. Senate Bill 0294 (2015); Mich. House Bill 4520 (2015).  Even if a Michigan Court ultimately determines that the law requires lessors to bear the cost of exterminating bedbugs, Defendants' violation of that law would not be purposeful or reckless due to the ambiguity of the current statute.

Second, because extortion under MCL 750.213 is not a strict liability offense, Plaintiff has the burden to prove specific intent. *See People v. Lardie*, 551 N.W.2d 656, 660 (Mich. 1996), *overruled* on other grounds by *People v. Schaefer*, 703 N.W.2d 774 (Mich. 2005).  Plaintiff must therefore prove that Defendants purposefully or voluntarily performed the wrongful act of extortion with an illegal intent.  *See Harris*, 845 N.W.2d at 487, n.44.  Because Plaintiffs cannot show that Defendants purposefully or knowingly acted with an illegal intent, Plaintiffs cannot show that Defendants acted with intent to commit a wrongful act. Because Plaintiffs cannot show that the non-Orkin Defendants acted with malice, Plaintiffs cannot show Defendants' acts constitute extortion in violation of MCL 750.213.

**ii**.

Plaintiffs also argue that Defendants' conduct is a violation of the Hobbs Act, 18 U.S.C. 1951.  Congress' intent in enacting the Hobbs Act was "to use all [its] constitutional power ... to punish interference with interstate commerce by extortion, robbery, or physical force." *Stirone v. United States*, 361 U.S. 212, 215, (1960).   Plaintiffs specifically allege that Defendant's collection of the Vermin Addendums constitutes both "Robbery" and "Extortion" under the act, and that Defendants' conduct has obstructed, delayed or affected commerce or the movement of any article or commodity in commerce. Am. Compl. ¶¶ 52(b).

**a.**

Under the Hobbs Act, extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). In order to fall under the prohibitions of the Hobbs Act, a plaintiff must first allege conduct "under color of official right."  *Id*.  The Supreme Court has held that, to satisfy this requirement, a Plaintiff must allege that "a public

- 12 -

official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Evans v. U.S.,* 504 U.S. 255 (1992). The Third Circuit has further clarified that a Plaintiff must allege "action in an official capacity or a pretended act in an official capacity, which means one pretends to hold an office that he in fact does not." *U.S. v. Manzo*, 636 F.3d 56, 64 (3d Cir. 2011).

Because Plaintiffs have made not alleged that Defendants acted or pretended to act as public officials and in an official capacity, Plaintiffs have not claimed that Defendants acted under color of official right.  Plaintiffs have therefore failed to state a claim of extortion under the Hobbs act as a predicate act.

### b.

Plaintiffs also allege robbery under the Hobbs Act as a predicate offense for § 1962 liability. For purposes of the Hobbs Act, robbery is defined as follows:

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1). To state a claim of robbery under the Hobbs Act, a Plaintiff must allege "(1) that the defendant coerced the victim to part with property; (2) that the coercion occurred through the wrongful use of actual or threatened force, violence or fear or under color of official right; and (3) that the coercion occurred in such a way as to affect adversely interstate commerce."  *United States v. Reed*, 780 F.3d 260, 271 (4th Cir.) (*citing  United States v. Buffey,* 899 F.2d 1402, 1403 (4th Cir.1990)).  The Supreme Court has explained that the Hobbs Act prohibits only physical violence in furtherance of a plan or purpose to engage in robbery. *Scheidler v. National Organization for Women, Inc*., 547 U.S. 9, 22 (2006).

- 13 -

There are two terminal deficiencies in Plaintiffs' claims of robbery under the Hobbs Act. First, because Michigan law is unsettled with regard to whether Lessors or Lessees should bear the cost of exterminating bedbug infestations, Plaintiffs cannot show that Defendants acted with a plan or purpose to engage in robbery. Second, Plaintiffs have made no allegation that the alleged acts of robbery had even a *de minimus* effect on interstate commerce as required by *U.S. v. Baylor*, 517 F.3d 899 (6th Cir. 2008). Because Plaintiffs have failed to state a claim upon which relief can be granted, Plaintiffs' federal RICO claim will be dismissed.

**III**.

Because Plaintiffs' federal claim will be dismissed on its merits, Plaintiffs related State law claims will be dismissed without prejudice. A federal court may exercise supplemental jurisdiction over a plaintiff's state law claims if they form part of the same controversy as the federal claim. *See* 28 U.S.C. § 1367(a). A federal court may decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over any state law claims rests within the Court's discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). However, the dismissal of the claim over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court. *Id*. at

863. In addition, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The issues presented are more appropriate for resolution by the state court system and therefore the Court declines to exercise its supplemental jurisdiction.  Plaintiffs' supplemental state law claims will therefore be dismissed without prejudice.

## IV.

Accordingly, it is **ORDERED** that the non-Orkin Defendants' motion to dismiss, ECF No. 17, is **GRANTED**.

It is further **ORDERED** that Plaintiffs' claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, ECF No. 1 Claim 1, is **DISMISSED with prejudice** as to all Defendants.

It is further **ORDERED** that Plaintiffs' state law claims, ECF No. 1 Claims 2-7, are **DISMISSED without prejudice**.  Plaintiffs are free to refile their state law claims in the appropriate Michigan state court.

It is further **ORDERED** that Plaintiffs' motion for a preliminary injunction, ECF No. 25, is **DENIED as moot**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 20, 2015

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 20, 2015.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager